IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANNY E. STARNER, | ) |
| | ) CASE NO. 3:15CV1841 |
| | ) |
| Petitioner, | ) JUDGE JAMES S. GWIN |
| | ) |
| v. | ) MAGISTRATE JUDGE |
| | ) KATHLEEN B. BURKE |
| CHARLOTTE JENKINS, *Warden*, | ) |
| | ) |
| | ) **REPORT & RECOMMENDATION** |
| Respondent. | ) |

Petitioner Danny Starner ("Petitioner" or "Starner") filed this habeas corpus action on August 27, 2015, pursuant to 28 U.S.C. § 2254.[1]  Doc. 1.  Starner is detained at the Chillicothe Correctional Institution, having been found guilty by a Marion County, Ohio, Court of Common Pleas jury of eight counts of gross sexual imposition and fourteen counts of rape.  Doc. 7-1, pp. 19-22.[2]  *State v. Starner*, Case No. 09-CR-097 (Marion Cty. Common Pleas Ct. filed December 10, 2008).  In an entry filed on December 10, 2008, the trial court sentenced Starner to five years in prison on each of the eight counts of gross sexual imposition, one count to run consecutively to the others, the other seven to run concurrently; a term of life imprisonment on each of the two counts of rape of a child under the age of ten, to run concurrently; ten years in prison on each of the ten rape counts, to run concurrently; and ten years to life on each of the last two counts of rape, to run concurrently and concurrent with the previous ten counts.  The sentences for the twelve rape counts, the gross sexual imposition counts, and the rape of a child under the age of

---

[1]  Starner's Petition was signed and dated on August 27, 2015.  *See* Doc. 1, p. 15.  "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).

[2]  Doc. page citations are to ECF Doc. page numbers.

1

ten counts were ordered to run consecutively to each other, for an aggregate sentence of thirty years to life in prison.  Doc. 7-1, pp. 20-21.

Starner's Petition for Writ of Habeas Corpus sets forth four grounds for relief.  Doc. 1, pp. 5-10.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Starner's grounds are time-barred.  Thus, the undersigned recommends that Starner's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED**.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).  The Marion County Court of Appeals, Third Appellate District of Ohio, set forth the facts as follows:[3]

> {¶ 2} The facts relevant to this appeal are as follows. Starner married Nancy McDaniel sometime in the early 1990's. At the time of their marriage, Nancy had two daughters, Vicky and Yvonne. Vicky eventually had two children, Doug, born April 26, 1995, and Meg, born May 28, 1998. Yvonne also had a child, Emma, who was born on May 9, 1994.
>
> {¶ 3} By age four, Emma was living with her father and step-mother and visiting with Nancy and Starner on occasion. Two years later, Yvonne moved to Pennsylvania and was unable to exercise her bi-weekend visitation with Emma. Instead, Nancy and Starner began exercising these visitation periods with Emma. For the next several years, Emma visited her grandmother and Starner, whom she called "Poppy," every other weekend.
>
> {¶ 4} In late June 2007, Nancy was diagnosed with cancer, which was found to be terminal in August of that year. During the next several months, Vicky and Starner cared for Nancy as her condition deteriorated. On February 4, 2008, Nancy died. Shortly after Nancy's death, Emma revealed that Starner sexually abused her nearly every time she visited since she was six or seven years old. These acts included him touching her

---

[3] The facts are taken from the Third District Court of Appeals' decision *State v. Starner*, No. 9-09-01 (Ohio Ct. App. Nov. 2, 2009); 2009 WL 3532306 (Ohio Ct. App. Nov. 2, 2009). Starner has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

breasts, vagina, and buttocks, having her touch his penis, having her sit on top of him and move back and forth against his penis, inserting his penis into her mouth, and him placing his mouth on her vagina. Emma also revealed that Starner showed her photographs on his computer of adults who were nude, both male and female, had her sit on his lap and watch films of adults having sex, and took photographs of her both while she had her clothing on and off. Further, Emma stated that Starner would ejaculate in a cup on occasion, and they would look at his semen under a microscope.

{¶ 5} Emma further stated that the appellant also involved her cousins, Doug and Meg, in at least one of these incidents by playing a game called "Truth or Dare" and having the children touch one another. She stated that all of these incidents occurred largely at her grandparents' home, in a cornfield and/or a stream nearby, and at an apartment building owned by Starner.

{¶ 6} Around the same time that Emma first disclosed this information, her cousins, Meg and Doug, also revealed that Starner had engaged in sexual activity with them. They disclosed that they would take walks with Emma and Starner. During one of these walks, the children took their clothes off and played in a stream. They then went to a nearby cornfield where the children and Starner pulled their pants and underwear down and played "Truth or Dare." Starner's erect penis was exposed during this time. In this game, Starner had Emma and Doug "French kiss" one another, had Emma touch Doug's penis, had Doug touch Emma's vagina, and had Doug kiss Emma's vagina.

{¶ 7} Based on these disclosures, a criminal investigation was conducted by the Marion County Sheriff's Office. During this investigation, two search warrants were executed on Starner's home, one on February 20, 2008, and one on March 5, 2008. The investigators seized numerous computers, hard drives, USB drives, computer accessories, cameras, girls' underwear, and a microscope in these searches. Many of these items, including a DNA standard from Starner and Emma, were sent to the Bureau of Criminal Identification and Investigation ("BCI") for analysis. No DNA belonging to Starner was found on any of Emma's clothing that was seized pursuant to the warrant nor was any of his DNA found on the microscope.

{¶ 8} A forensic analysis of the electronic equipment found numerous photographs of Emma clothed, some of which show her in seemingly provocative poses. However, no nude photographs of Emma or any other children were found. The analysis did find several photographs of nude adults on the computer hard drives. These photos contained images of various sexual acts being performed, and several photos focused on the vaginal areas of the depicted subjects. In addition, a program entitled "Evidence Eliminator" was found, as was evidence of its installation and use, on two of the computers seized from Starner's home. This program is designed to permanently remove files in their entirety from a hard drive. Further analysis showed that Evidence Eliminator was last accessed on one of the computers on the morning of February 20, 2008, the day of the first search of Starner's home.

{¶ 9} The analysis also discovered a number of sexually explicit stories on the hard drives. The subject matter of the vast majority of these stories centered around acts of

> incest and the molestation of children. Some of these stories had titles illustrative of their content. For instance, one such story was titled: "Dirty Little Fuckers (Incest brother-sister-cousins/preteen/zoo sex girl-dog)."

*State v. Starner*, 2009 WL 3532306 (Oh. Ct. App. Nov. 2, 2009).

## II. Procedural Background

### A. State Trial Court

On March 5, 2008, a Marion County Court Grand Jury indicted Starner on thirteen counts of gross sexual imposition, R.C. § 2907.05(A)(4), and nineteen counts of rape of a child under the age of thirteen, R.C. §2907.02(A)(1)(b). Doc. 7-1, pp. 3-9. Six of the rape charges included additional specifications that the victim was less than ten years of age at the time of the offense, rendering the charges eligible for the imposition of a sentence of life in prison. *Id*. Starner was re-indicted on April 30, 2008, to include a mens rea for each offense in accordance with a recent decision of the Ohio Supreme Court. Doc. 7-1, pp. 10-17. Starner, through counsel, pleaded not guilty to the charges. Doc. 7-1, p. 18.

The case proceeded to trial. After the state rested its case, Starner made a motion for acquittal pursuant to Crim. R. 29. *State v. Starner*, 2009 WL3532306, at *3 (Oh. Ct. App. Nov. 2, 2009). The trial court denied the motion. *Id*. The state moved to dismiss four counts of gross sexual imposition and five counts of rape and the trial court granted the unopposed motion. *Id*. The jury returned a guilty verdict on twenty-two counts in the indictment—eight counts of gross sexual imposition and fourteen counts of rape. Doc. 7-1, p. 19. In an entry filed on December 10, 2008, the trial court sentenced Starner to five years in prison on each of the eight counts of gross sexual imposition, one count to run consecutively to the others, the other seven to run concurrently; a term of life imprisonment on each of the two counts of rape of a child under the age of ten, to run concurrently; ten years in prison on each of the ten rape counts, to run concurrently; and ten years to life on each of the last two counts of rape, to run concurrently and

concurrent with the previous ten counts. The sentences for the twelve rape counts, the gross sexual imposition counts, and the rape of a child under the age of ten counts were all ordered to run consecutively to each other, for an aggregate sentence of thirty years to life in prison. Doc. 7-1, pp. 20-21.

### B. Direct Appeal

On January 6, 2009, Starner, through counsel, timely filed a notice of appeal. Doc. 7-1, p. 23. In his brief, he raised the following assignments of error:

> 1. Prosecutorial misconduct deprived Danny Starner of his rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Federal Constitution and Article 1, §2, 10, and 16 of the Ohio Constitution.
>
> 2. The trial court erred in permitting the state to introduce improper and prejudicial computer gang [sic] testimony. As a result, the trial court violated Starner's rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the U.S. Federal Constitution and Article 1, §2, 10, and 16 of the Ohio Constitution.
>
> 3. The representation provided to Danny Starner fell far below the prevailing norms for counsel in a criminal case, was unreasonable, and affected the outcome in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments as well as Article 1, §2, 9, 10, and 16 of the Ohio Constitution.
>
> 4. The trial court erred in entering judgment against Danny Starner since the evidence was insufficient to sustain a conviction and the conviction was against the manifest weight of the evidence in violation of the Fifth, Sixth, and Fourteenth Amendments to the U.S. Federal Constitution and Article 1, §2, 10, and 16 of the Ohio Constitution.

Doc. 7-1, pp. 30-31. On November 2, 2009, the Ohio Court of Appeals affirmed the judgment of the trial court. Doc. 7-1, pp. 132-188.

On December 17, 2009, Starner appealed to the Ohio Supreme Court and presented the following propositions of law:

> 1. Prosecutorial misconduct, including the use of improper and prejudicial computer evidence, deprived Danny Starner of his right to a fair trial. U.S. Const., 5th, 6th & 14th Amends.; Ohio Const., Art. I, § 2, 10, & 16.
>
> 2. A trial court may not permit the state to introduce improper and prejudicial computer testimony. U.S. Const., 5th, 6th & 14th Amends.; Ohio Const., Art. I, § 2, 10 & 16.

3. The representation provided to Danny Starner fell far below the prevailing norms for counsel in a criminal case, was unreasonable, and affected the outcome of his trial. U.S. Const., 5th, 6th & 14th Amends.; Ohio Const., Art. I, § 2, 10 & 16.

4. A trial court may not enter judgment against an accused when the evidence is insufficient to sustain a conviction and the conviction is against the manifest weight of the evidence. U.S. Const., 5th, 6th & 14th Amends.; Ohio Const., Art. I, § 2, 10 & 16.

Doc. 7-1, pp. 189-209.  On March 10, 2010, the Ohio Supreme Court denied Starner leave to appeal and dismissed his appeal as not involving any substantial constitutional question. Doc. 7-1, p. 221.

### C. App. R. 26(B) Application to Reopen

On June 11, 2015, Starner, proceeding *pro se*, filed a motion for leave to file an App. R. 26(B) application for reopening.  Doc. 7-1, pp. 222-258.  On July 6, 2015, the Ohio Court of Appeals denied his application because it was untimely and he failed to show good cause for his lateness. Doc. 7-1, pp. 259-260.  The state Court of Appeals also found that Starner failed to set forth any genuine issue as to whether he was deprived of effective appellate counsel. *Id*.

### D. Federal Habeas Petition

On August 27, 2015, Starner, *pro se*, filed a Petition for a Writ of Habeas Corpus.  Doc. 1.  He listed the following grounds for relief:

> **Ground One:** Prosecutorial misconduct deprived petitioner of his rights as guaranteed him by the Fifth Sixth, and Fourteenth Amendments to the U.S. Constitution also Art. 1 §2, §10 and §16 of the Ohio Constitution.
> **Supporting Facts**:
> 1. [] The question raised in this branch of the state's contempt motion was whether the mutual disclosure of the "results or Reports" of an expert under Crim R.16(c)(1)(b) must be reduced to writ[]ing at trial.
> 2. Challenges to Evid. R. 401 and issue of Exclusion under Evid. R. 403(A) arguing the purported evidence relevant to guilt introduced software (Evidence Eliminator) to establish guilt.
> 3. Introduction of evidence which probative value did not out-weigh potential prejudice to petitioner by misleading Jury on an element of alleged offence.  Citing U.S. v. Solivan, 937 F.2d 1146 (6th Cir. 1991).

**Ground Two**: The trial court erred in permitting the state to introduce improper and prejudicial computer testimony. As a result the court violated petitioners right as guaranteed to him by the 5th, 6th, and 14th Amend. U.S. Const; Art. 1 §2, §10 and §16 Ohio Const.
    **Supporting Facts**:
        1. Improper introduction of proffered testimony under Evid Rule 104(a)
        2. Trial Judge abdicated duty as gate keeper resting credibility of hearsay statement by unreliable witness
        3. Trial court allowed testimony of B.C.I. forensic investigator over defense objection as to need for software titled Evidence Eliminator or anti-forensic software
        4. BCI Agent testimony fails test had in Daubert, 509 U.S. 579 (1993)
        5. Trial court erred in failing to suppress Evid. Rule 703 expert testimony, tainting the Jury to the prejudice of petitioner

**Ground Three**: Trial counsel representation fell below the prevailing norms for counsel in a criminal case, was unreasonable and affected the outcome of trial in violation of the 5th, 6th, 8th, and 14th Amendments U.S. Const.;, also Art. 1 §2, §10, and §16 Ohio Const. Passim
    **Supporting Facts**:
        1. Trial counsel failed to impeach hostile State witness (Emma Jumper) and (mother Ms. Yvonne Dempsey) having a bias motivation to fals[e]ly implicate petitioner in a series of sexual offenses.
        2. Failure to timely and adequately object to prosecutorial misconduct which occurred during trial
        3. Failure to timely object to multiple trial court errors.
        4. Failure to object timely and adequately to improper Jury instructions.
        5. Failure to timely move for Judgment of acquittal (Rule 29)
        6. Cu[]mulative effect of errors and omissions affected outcome of trial

**Ground Four:** The trial court erred in entering judgment against petitioner against manifest weight and insufficient evidence to sustain a verdict in violation of the 5th, 6th, and 14th Amend U.S. Const. and Art. 1 §2, §10, and §16 Ohio Const.
    **Supporting Facts**:
        1. Trial court erred in balancing the probative value of reliability of witness against the accu[]sed.
        2. No rationale trier of fact would have found the essential elements of any crime proven beyond a reasonable doubt.
        3. The trial court's decision to allow improper, incorrect, and highly prejudicial testimony about non-exist[e]nt child pornography, and purported bad acts deprived him of a fair trial.
        4. The trial court should have granted petitioner Crim R. 29 acquittal motion.

Doc. 1, pp. 5-10. Respondent filed a Return of Writ (Doc. 7) and Starner filed a Traverse (Doc. 14) and a Motion to Supplement the Record pursuant to Fed.Civ.R. 15(a) (Doc. 15). In her

Return of Writ, Respondent argues that Starner's Petition is time-barred and that his grounds fail on the merits. Doc. 7, pp. 7-31.

## II. Law and Analysis

### A. AEDPA Statute of Limitations

Respondent contends that Starner's habeas petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus and provides, in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing 28 U.S.C. § 2244(d)(2)). This statutory tolling provision, however, does

8

not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

"An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, e.g., requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000)); *Allen v. Siebert*, 552 U.S. 3, 5 (2007) ("a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)," citing *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005)). A post-conviction petition deemed untimely pursuant to Ohio law is not "properly filed" and, therefore, does not toll the statute of limitations. *Israfil*, 276 F.3d at 771-772.

**B. Starner's Petition is Barred by the One-Year Statute of Limitations**

The one-year statute of limitations began to run when Starner's case became final. 28 U.S.C. § 2244(d)(1)(A). The Ohio Supreme Court declined to accept jurisdiction of Starner's direct appeal on March 10, 2010. He had ninety days to file a petition for certiorari with the United States Supreme Court. He did not do so, and the 90-day period expired on May 10, 2010. AEDPA's one-year limitations period began to run the next day, May 11, 2010, and, absent equitable tolling, expired on May 11, 2011. *See Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000) (limitations period begins to run the day after the time to file a petition for certiorari expires). Starner filed his Federal Habeas Petition on August 27, 2015, more than four years after the limitations period expired.

9

Although Starner filed a Rule 26(B) Application to Reopen in state court on June 11, 2015, this filing did not toll the statute of limitations because it was filed after the limitations period had already expired. *See* Vroman, 346 F.3d at 602 (upon the expiration of the limitations period, a state collateral petition will not toll the statute of limitations per § 2244(d)(2)). Moreover, Starner's 26(B) Application was rejected by the Ohio Court of Appeals as untimely. Therefore, it was not "properly filed" and cannot serve to toll the limitations period. *See* 28 U.S.C. § 2244(d)(2) (a properly filed application for state postconviction or collateral review tolls the limitations period); Israfil, 276 F.3d at 771-772 (postconviction motion rejected by the Ohio state court of appeals as untimely is not "properly filed" and, therefore, does not toll the limitations period per 28 U.S.C. § 2244(d)(2)).

To the extent Starner argues that the limitations period should begin to run later pursuant to § 2244(d)(1)(C) (Doc. 14, pp. 15, 19), such an argument is without merit. Under § 2244(d)(1)(C), the limitations period begins to run on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Starner cites the United States Supreme Court decision in *Riley v. California*, 134 S.Ct. 2473 (2014), which held that police officers generally could not, without a warrant, search digital information on cell phones seized from defendants as incident to the defendant's arrest. Doc. 14, p. 15. He appears to suggest that *Riley* announced a newly recognized right that applies to his case. Doc. 14, pp. 15, 18. The undersigned disagrees. First, *Riley* is inapplicable because the search of Starner's home and computers was made pursuant to a warrant. *See* Doc. 17-2, p. 248 (police detective describing the search of Starner's home pursuant to a warrant); Doc. 17-4, pp. 52, 63-64 (deputy sheriff describing the search of Starner's home and computers pursuant to a search warrant). Second, *Riley* is also inapplicable because Starner does not allege that the police

searched his cell phone; he concedes that the police searched his personal computers found at his home.  Third, "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."  *Tyler v. Cain*, 533 U.S. 656, 663 (2001); *In re Mazzio*, 756 F.3d 487, 489 (6th Cir. 2014).  The Supreme Court did not hold, in *Riley*, that the rule it announced applied retroactively to cases on collateral review.  *See, e.g., Hart v. Quintana,* 2015 WL 8770077, at *4 (E.D.Ky Dec. 14, 2015) ("Hart has not demonstrated that *Riley* applies retroactively to cases on collateral review, such as his current § 2241 petition."); *Chatman v. Green,* 2016 WL1588496, at *2 (D.Md., Apr. 19, 2016) (*Riley* does not apply retroactively to § 2254 petitions; thus, "the timeliness of Petitioner's application for habeas relief must be assessed under § 2244(d)(1)(A), and not under § 2244(d)(1)(C).").  Finally, *Riley* was decided in June 2014; Starner filed his federal habeas petition on August 27, 2015, more than one year after the decision in *Riley* was announced.  Doc. 1, p. 15.  Thus, even if the decision in *Riley* could serve to start the one-year limitations period, Starner filed his federal habeas petition too late.[4]

Finally, Starner argues that the state created an impediment to his timely filing of his federal habeas petition pursuant to 28 U.S.C. § 2244(d)(1)(B) when (1) the prison forced him to throw away most of his "material and relevant documentary evidence necessary to petition this court"; (2) the prison  thereafter "tossed [him] into isolation"; and (3)  he faced restrictions based on prison policy with respect to funding for making copies or mailing items.  Doc. 14, pp. 14-15.  Even if these alleged acts by the prison could constitute a state-created impediment, Starner asserts that these acts occurred in February 2015, well after the limitations period expired.  *Id*.  He does not assert that this alleged impediment existed prior to that time; indeed, in 2014 Starner was drafting, copying, and sending documents to other courts and to former counsel.  *See, e.g.*,

---

[4]  Starner filed his Rule 26(B) application on June 11, 2015.  The Ohio Court of Appeals denied his application as untimely and he did not argue in that application that the rule announced in *Riley* applied to his case.

Doc. 1-3, pp. 15-22; *see also Starner v. Clark*, Case No. 2:15-cv-2764, Doc. 1-1, pp. 1-2 (Starner's complaint in his federal civil case wherein he describes how, after the prison permitted him to have two extra boxes and storage space for legal material from early 2010 until February 2015, the prison then ordered him to consolidate his materials into one box).

### C. Starner is Not Entitled to Equitable Tolling

Starner is unable to demonstrate that he is entitled to equitable tolling. A petitioner is entitled to equitable tolling when he has been pursuing his rights diligently and some extraordinary circumstance prevented him from timely filing his habeas petition. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace*, 544 U.S. at 418). The petitioner bears the burden of establishing entitlement. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

Here, Starner was not diligent in pursuing his claims. Although he argues that his trial counsel advised him that his funds were exhausted and counsel could not, therefore, advance his cause to federal court (Doc. 1, pp. 13-14), this did not prevent Starner from filing a federal habeas petition *pro se*. Starner also asserts that he was "denied all his records by trial counsel for three years after sentencing despite persist[e]nt written and oral requests to trial counsel." Doc. 1, p. 14. Assuming that to be true, Starner was sentenced in December 2008; therefore, he had all his records by 2011. *See, e.g.*, Doc. 7-1, p. 228 (Starner's Rule 26(B) Application wherein he states that he received a copy of his file from counsel in May 2011); Doc. 14, p. 8. Thus, to the extent he did not have a copy of his file prior to 2011 (assuming such could be grounds for equitable tolling), he received a copy of his file in May 2011 and still did not file his federal habeas petition until August 2015. The fact that, upon receiving his file, he chose to pursue investigating "the fraud and deceit paper trail his trial counsel left behind while defrauding Petitioner out of his banking and annuity accounts" (Doc. 1, p. 13) instead of pursuing his rights

12

in federal court (Doc. 1, p. 14)[5] does not show that was pursuing his rights diligently. *See Pace, 544 U.S. at 418*. Nor does his independent investigation into counsel's activity constitute some extraordinary circumstance that prevented him from timely filing his habeas petition. *Id*.

### D. Starner Cannot Show Actual Innocence

"[A] petitioner may also be eligible for equitable tolling if he demonstrates actual innocence so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. App'x 606, 609 (6th Cir. 2012) (citing *Murry v. Carrier*, 477 U.S. 478, 485-496 (1986)). "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "The evidence must demonstrate factual innocence, not mere legal insufficiency." *Id*. (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The Supreme Court underscored the fact that "the miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*, 513 U.S. at 329).

Here, Starner does not present new reliable evidence of his actual innocence of the charges on which he was convicted. He first identifies evidence allegedly showing that his trial counsel unlawfully accessed his personal accounts despite being paid in full for representing Starner in his state court proceedings. Doc. 14, pp. 5-6. This evidence does not demonstrate factual innocence. *Bousley*, 523 U.S. at 623. Next, Starner identifies the "BCI DNA Report"

---

[5] Starner states, "Petitioner proceeded, after having received his files, investigating to find where his funds went. Petitioner received as late as January 2015, documents and information showing that between March 5, 2008 and December 25, 2008" an exhaustive list of money and assets allegedly were unlawfully taken from him by counsel. Doc. 1, p. 14. These allegations are not relevant to his claims on appeal in state court or in his federal habeas petition.

13

which, he alleges, the jury was not shown and which shows that a top belonging to the victim contained DNA that belonged to neither Starner nor the victim. Doc. 14, p. 6. This evidence, however, was presented to the jury and, therefore, is not new. *See* Doc. 17-3, pp. 5-8, 23-24 (testimony of defense witness Travis Worst, forensic biologist for the Ohio State Bureau of Criminal Identification and Investigation, explaining that the DNA found on the victim's top did not belong to Starner or the victim); Doc. 17-3, pp. 64, 76-77 (testimony of defense witness Emily Draper, DNA forensic scientist for the Ohio State Bureau of Criminal Identification and Investigation, confirming that the DNA found on the victim's top did not belong to Starner or the victim). A newspaper article allegedly showing that the state trial judge "mishandled a $4.2 million dollar trust prior to, during, and after Petitioner's 2008 criminal trial" (Doc. 14, p. 6; Doc. 1-5, pp. 10-13) does not demonstrate factual innocence. Alleged evidence of the health issues that trial counsel suffered from (Doc. 14, p. 6) does not demonstrate actual innocence. Alleged evidence of Starner's low testosterone levels (Doc. 14, p. 11; Doc. 14-21, pp. 3-7) does not demonstrate actual innocence and, furthermore, testimony regarding Starner's testosterone levels was presented to the jury and is not new evidence. *See* Doc. 17-3, pp. 95-96 (Starner's doctor testifying that Starner had a low testosterone level); Doc. 17-3, pp. 101-102 (Starner's doctor testifying that a low testosterone level does not determine "whether the person can or can't have an erect penis").

Starner also alleges that evidence shows that the photo files found on his computer had been tampered with after they were taken from his home because the "file created dates" listed for some of the photos of the victim were later than the "last written dates" listed on these photos. Doc. 14, p. 10; Doc. 1, p. 19-20. The photos and file data were presented to the jury and are not new evidence, as Starner himself concedes. *See* Doc. 1, pp. 19-20 (Starner listing the data of the photos included in the exhibits that were presented to the jury); Doc. 7-2, pp. 275-278

14

(admission of photos into evidence). Speculation as to whether the files were overwritten when the state accessed them was presented to the jury by defense counsel. *See* Doc. 17-2, p. 220. And the newly submitted affidavit of Starner's purported expert, an inmate in prison, clears up this purported mystery when he explains, "last written never occurs before file creation without it being created somewhere else and the state shows no proof of that location." Doc. 1-5, p. 46. That the state did not show proof of "that location" does not demonstrate actual innocence. Lastly, testimony at trial explained that the date a photo file is created on a computer does not always reflect the date that the photograph was taken (Doc. 17-2, p. 91); thus, Starner's assertion that digital photo files were tampered with because some included a "file created date" that fell on a weekday when the victim was at school (Doc. 1, p. 20) is not evidence of actual innocence.

Finally, Starner identifies impeachment evidence that was not presented to the jury that purports to show that the victim was not truthful, in the form of proffer testimony of the victim's step-mother stating that the victim's accusations that the step-mother physically abused the victim were not truthful. Doc. 14, p. 6; Doc. 7-1, 237-239. This evidence is cumulative; the jury heard testimony regarding whether the victim was truthful.[6] *See* Doc. 17-1, pp. 197-198; *see also* Doc. 17-1, pp. 344-346 (victim's father testifying that the victim previously made accusations of physical abuse against her step-mother and that, when he first heard that the victim made allegations of abuse against Starner, he had "a concern" that the victim's mother had put the victim "up to it"), p. 341 (defense attorney asking the victim's father, "you know what it's like to be falsely accused of sexual abuse, don't you?"); Doc. 17-1, pp. 248, 261-276 (defense counsel questioning the social worker who first interviewed the victim regarding the potential for children to make false accusations of abuse). Moreover, "The possibility of

---

[6] The same holds true with respect to evidence Starner attached to his Motion to Supplement the Record, a purported medical record that he alleges shows that the victim reported she had not engaged in sexual activity. *See* Doc. 15-1. Moreover, the victims' normal medical examination findings were presented at trial and are not new. *See* Doc. 17-1, pp. 292-293.

evidence in this case undermining the character of the victim [ ] does not satisfy the extremely high threshold suggested by *Schlup* and *Rust*[*v. Zent*]." *Meek v. Bergh*, 526 Fed. App'x 530, 536-537 (6th Cir. 2013) (unpublished).

In sum, the evidence identified by Starner is not new evidence and it does not serve to show that it is more likely than not that no reasonable juror would have convicted him. *See McQuiggin*, 133 S.Ct. 1933. His case is not a one of a "severely confined category" of cases in which the miscarriage of justice exception applies, *id*., and his Petition should be dismissed as time-barred.

### III. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Starner's habeas petition be **DISMISSED** as time-barred. Starner's Motion to Supplement the Record (Doc. 15) is **DENIED** as moot.

Dated: May 31, 2016

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

16